Please be seated. All right, Ms. Duvall, whenever you're ready. Thank you. Good morning. Good morning. May it please the Court, I'm Deborah Duvall. I'm here on behalf of Corporal Peter Georgiades. I'm reserving five minutes of my time for rebuttal. We're here before you this morning because the District Court denied our motion for summary judgment that was based on qualified immunity. It's well settled that qualified immunity denials can be immediately appealed under the Clatter Order Doctrine, and it's de novo before this Court. The underlying case before you is a 1983 action that was based on false arrest and false imprisonment based on two chief complaints by Mr. Osborne. First, that there was omission of fact from the arrest warrant filed by Corporal Georgiades, and also that during the questioning of the 5-year-old little girl, there were leading and suggestive questions that were asked of her that Mr. Osborne claims resulted in false testimony. With regard to the omission of fact, there were two facts that Mr. Osborne alleges were withheld. First, that during the interview with the licensed clinical social worker, Ms. White, that the 5-year-old little girl initially denied abuse. And secondly, that Dr. Lamonaco, who did the physical examination of the little girl approximately three weeks later, while he did not rule out abuse, he could not say that he found any physical evidence of abuse. The District Court correctly applied the Franks v. Delaware test in the sense that they acknowledged that that was the test to be applied when there were omissions of fact. But we believe that the District Court erred in applying both of those prongs. The first prong for Franks v. Delaware is that there has to be either an intent to mislead the magistrate or a reckless disregard of whether it would mislead the magistrate. Mr. Osborne has presented no facts that supports this allegation. He makes the bare allegation that there was a preference towards the mother, that they were sympathetic toward the mother, but there's absolutely nothing that was presented to the District Court to support this. And under the Franks v. Delaware standard, it requires a substantial showing. In contrast, what we have on Corporal Giordatti's side is that we have the licensed clinical social worker who asked the questions of this little girl, and she obviously heard every answer of the little girl, including the denials. We have the Assistant State's Attorney, Diane Tobin, who was presented with the entire video because this interview was both video and audio taped. And she reviewed all of the questions and answers and accepted that case for prosecution. In addition, you will note in Judge Bennett's own decision, and I believe it's at the appendix of page 333, that he acknowledges that denials by children are not uncommon. With regard to Dr. Lamonaco, the important part about that examination is that it occurred almost three weeks after the alleged abuse was alleged to have occurred in October 16th. His examination didn't occur until November 3rd. So certainly any physical evidence could be healed or certainly would be gone at that point. It is reasonable and probable. Who asked for the examination? Your Honor, it goes through the Child Advocacy Center. The government did, right? It did, Your Honor. But then they must have thought they maybe would get something from it, didn't they? Certainly, and I believe that's probably, I don't know for a fact, but I believe it's probably commonplace to seek a physical examination, regardless of the timing, just to see if there could be scarring or some other things, but they didn't find any physical. It's clearly exculpatory, isn't it? I contend it's not necessarily exculpatory because of the time lapse. So he did not rule out abuse. He simply said he couldn't find physical abuse. But again, the point is that he didn't find any evidence of it. He did not, Your Honor, and the affidavit does not. Would it be exculpatory based on the allegation of penetration? Even if it is exculpatory, Your Honor, an arrest warrant doesn't have to have every piece of exculpatory evidence included. Well, that certainly expresses some intent to be kind of overboard in it. That's pretty crucial evidence. We're trying to get at truth. I mean, the prosecution has a higher duty than the defense, correct? Your Honor, yes, the duty would be there, but I think it is plausible that given the circumstances in this case and the very graphic detailed statement of this little girl, that it begins on sealed appendix, page 46, and I refrain from giving the specifics because those details are sealed, that her compelling statement, which included not only the detail of what transpired, but the sensation of pain, and for a 5-year-old to be able to describe in detail something that occurred, including the sensation of pain, I would argue that that is compelling. And that's why the physical examination was even more important in this case because of that alleged excruciating pain. It would be a suggestion that it would be trauma that would be evident, wouldn't it? She didn't say excruciating pain. She said it resulted in pain, and she cried. I thought you said it was aggravated alleging pain. I thought that's what you said. No, Your Honor, if I did, I misspoke. I apologize. Wouldn't that be the fact that if you find none, even more so how important that the negative finding, physical, would be important in this case? It's important, but it's not necessarily dispositive, Your Honor. But on behalf of Corporal Giordatti's, when you have the licensed clinical social worker who indicated that denials are commonplace, and you have the assistant state's attorney who took the case after hearing the denials as well, that it's quite plausible that Corporal Giordatti's, and I say probable, because that he did not view it as particularly relevant or probative. But in getting to the, even if we assume that there is an intent of reckless disregard, which requires a particular showing and the omission itself can't satisfy that prong, if you get to the second prong of the Franks v. Delaware test, which is that it has to be material fact that's omitted, and by material, the court reviews it, inserts the omitted facts, and makes a determination of whether probable cause continues to exist, Judge Bennett did do that analysis, and Judge Bennett did not conclude that it negated probable cause. His conclusion was that it could negate probable cause and that it had the potential to negate probable cause. However, he did not conclude that it did negate probable cause, so the second prong is not satisfied of Franks v. Delaware either. And I would also point out... The determination of materiality, Your Honor, is a determination by the court, and the facts in this case really aren't in dispute. There's no allegation that she didn't say what she actually said, and there's no allegation that Corporal Giordatti's put anything in the affidavit that she didn't actually say. So I don't think there's any dispute of fact in this case with regard to that. But in addition to not reaching that second prong and not reaching that standard, we do have a grand jury indictment in this case, and the grand jury indictment handed down a 16-count sexual assault-related crimes against Mr. Osborne, and the case law in this Durham v. Horner is that the grand jury indictment is conclusive proof of probable cause in this case. Was there any change in the evidence between the date of the arrest and the indictment? There was approximately a three-week time frame. My knowledge is that nothing changed between then. Same evidence? I believe so, Your Honor. We have the grand testimony? I do not have the grand jury testimony. Well, it's not in the record. How do we know whether it is or not? It is not in the record, Your Honor. We don't answer that question. You don't know on this record whether or not it got better before the grand jury. I do not know. I'm just going to make sure. I'm not arguing that you don't know. I appreciate your candor, but to answer the question the Chief asked you is you don't know whether it got better or not. No one knows because it's not in the record. It is not in the record. But we do know he was arrested before he was indicted. Yes, that is correct, Your Honor. Three weeks, approximately three weeks before he was indicted. And with regard to what has been coined the second element, the fabrication of evidence claim, because we have the omission of fact and we also have the fabrication of evidence claim, we believe that's somewhat of a misnomer because for fabrication of evidence claims, particularly in the Fourth Circuit that I've seen, there's an actual fabrication or manufacturing of evidence by the officer. What about in this case? Didn't he cut the interview off when he started getting into the abuse with the foot and that kind of thing? And it was getting sort of somewhat one could view it. I'm not suggesting it was. But viewed as getting sort of fanciful and kind of out of the strange and sort of ended it. Is that fabrication? Because fabrication literally means to make, doesn't it? Right, and I agree, Your Honor, but I don't believe that's a fabrication of evidence. And when you look at the Fourth Circuit cases, there is a fabrication in the sense of, I believe in the Miller case, there was a tag number that wasn't associated with the defendant in that case. Even in the case cited by the District Court in the motion, I mean in the denial of our summary judgment, the Wilmore case, that was where the defendant supposedly gave some non-public information to the police officer. None of that happened, and it turned out not to be true. None of that is here in this case. I'm not sure it is a fabrication. But there's two aspects of fabrication in terms of the etymology of the word. You can make something by making it augmented, but you can also make things like sculptures chiseled away. So in a sense, the fabrication is, well, shouldn't it be just a flow? If that's what she's saying is what happened, why cut it off to an advantage of the prosecution? Wait, wait, wait, wait, that's enough, that's enough. Fabrication goes both ways. You're giving examples of when you're putting something and adding to it. Fabrication also involves chiseling away. I mean, is that proper? If you're there for an interview, don't you want to hear everything that the witness says, why would you cut it off? Because it seems to take away from the veracity of what was said before, doesn't it? Isn't that unreasonable for the court to have found that? The court could find it. I don't know if you disagree with it, but do you follow what I'm saying? I do understand what you're saying, Your Honor, and I don't know why it was cut off. I know there was a conversation. Those conversations aren't recorded other than on the end of the licensed clinical social worker. I know that Corporal Giordani is obviously looking for the elements of a crime when he's observing these interviews, whether it continued to have probative value. I don't know. That could be why it was discontinued at that point, because you already had the elements of the crime well before the interview was terminated. And so I would assume there was just no more probative value available, and they made a decision with the 5-year-old little girl to terminate the interview. But with regard to this fabrication of evidence claim, we believe that it's more appropriately viewed in the context of an interview, whether there's a right to have your interview conducted in a particular way. I could find no Fourth Circuit cases that spoke of a constitutional right, because we're speaking of qualified immunity, so there has to be a constitutional or statutory right that was violated that was clearly in effect at the time of the offending conduct. I haven't found any Fourth Circuit cases. And, in fact, in the Wilmore case that the judge cites too below, that case the court notes that the plaintiff concedes that there is no constitutional right to have questions asked in a particular way, that leading questions aren't a violation of that constitutional right. And I believe this court can dispose of this case by saying that, no, there is no constitutional right to have your questions asked in a particular way without going into a rule of law of what standards should apply in an interview, particularly with children. But we would – You've got a case where the interview is of yourself. You don't have a right as to how your interview is conducted. You mean a third party's interview? That was in those cases? The Wilmore case was with regard to the suspect himself, because – That's what I'm talking about. Yeah. But I had – that's the only –  But that's the only case I even found in the Fourth Circuit dealing with interviews. That's why, because the others are analyzed in the context of evidence in terms of fabrication, because it's not a matter of how you conduct the interview. It's a question of evidence as to your – You see, the idea is to search for truth. That's why I said prosecution has a higher – Well, you know, the fabrication, because why don't you cut it off there? It's almost like having some evidence and you make it look like Swiss cheese. Well, let's take out – not in this case. Well, that's what she said here that he didn't do anything. Well, let's take that part out. And then she said, let's take that part out and then condense it and then say, well, this is the evidence right here. This is what she said. Wait a minute. That's 20 minutes you cut out of here. You think that would be appropriate? I'm not saying to change hypothetically. Do you think that would be appropriate? You said, I can do it any way I want. It's my tape. We taped the interview. This is what we're going to give you. This is evidence. That wouldn't be evidence, would it? Certainly that would be inappropriate, Your Honor, and as you indicated, that's not the allegation in this case. Absolutely, yeah. And also, what's important to remember is we don't have any proof that what the little girl said isn't true. So we're couching it in terms of fabrication of evidence, but in the criminal side of this case, this case was steaded. There was no – the prosecutor did not drop the case. It didn't go through the jury process, and it was a finding of not guilty. This was a stead.  has not been proven to not be true. So if it's addressed as an interview technique question, which I do believe is more appropriately, it's couched in those terms, there is no constitutional right to have interviews conducted in a particular way. So for qualified immunity purposes, Corporal Giordotti would be entitled to qualified immunity. If this court is inclined to hand down a rule of law with regard to interview techniques, we request the court review the Devereaux v. Abbey case, which is a Ninth Circuit case that I cited to in my brief, and was most closely in context to this case. It was interview of witnesses, children that were allegedly abused, and the rule of law that they came down to was that it had to be coercive or abusive to the extent that it would result in fabrication of evidence. In this case, we don't have that. We don't have that Corporal Giordotti's knew or should have known that the girl was going to be fabricated. In fact, I apologize, Your Honor, my time is up. May I finish? Finish, Your Honor. Thank you. We have no evidence that Corporal Giordotti's thought that Mr. Osborne was innocent and continued to investigate, and we certainly don't have anything that indicates that he thought that she was not telling the truth. Thank you, Your Honor. You've got some time reserved. I do. I appreciate your recognizing your red lights on. You'd be surprised how many lawyers come up here and are colorblind and can't see red. Mr. Smith, be glad to hear from you, sir. Good morning, Your Honor. Good morning. First, I'd like to thank the Court for its time and consideration in allowing us to argue this case. Mr. Osborne suffered terribly as a result of these allegations, and Corporal Giordotti's, or Sergeant Giordotti's, who arrested him and who applied for the search, solely relied upon the statement of a confused five-year-old girl who consistently denied that anything ever happened to her. And when the questioning went on and on and on, then the little girl finally said, and then what they said was, you're not going to get in any trouble if you tell us what your daddy did. And the questioning went on in that manner, and finally she said, okay, yes. And then she went on to describe a ridiculously absurd account of her what occurred. And the account was so ridiculous that no reasonable officer, no reasonable well-trained officer would believe it or have, or wouldn't have questions, additional questions. In this case, further investigation clearly was warranted, and it was not further investigated. How did they get 16 counts? Did the child allege 16 different incidents? The child alleged that it happened two times on two different dates. And so when the original arrest warrant was issued, eight counts were entered against him in the initial hearing. And then later when the indictment occurred, because I believe, because it's not in the record, I believe that because the little girl said it happened on two separate dates, then they placed an additional eight counts on a different date. On what basis? What factual basis? I have, I believe, it's not in the record, but I believe that it's only because the little girl mentioned that she had visited with her father two times and that it happened two times instead of one. That was one of the reasons I asked if the evidence had changed between the date of the arrest and the indictment was because there were so many counts that I was wondering where the evidence of these other days came from. No, and I don't know for sure because I don't have the record, but during the interview the little girl mentioned that she had visited with her father two times, one time approximately three weeks  and so if we look at the evidence in the light most favorable to Mr. Osborne, surely a jury could find that any well-trained officer when viewing the totality of the circumstances would have serious doubts as to whether this incident even occurred. And because of those serious doubts, a reasonably well-trained officer would then likely conduct further investigation. Maybe he would have a second interview with the little girl or maybe he may even polygraph the mother or maybe he would make a stronger effort to try to interview the father or any other witnesses. In the record he did interview one other person who was the girlfriend of Mr. Osborne, Mr. Osborne's current girlfriend at the time. And she indicated that she saw no problems, but that she was not there or she was not present the entire time that the children were visiting. And so thereafter, after Corporal Giardotti interviewed the girlfriend, he went and got a warrant just based on the evidence presented at the child's interview. The other side cites common sense and social science studies that show that it's not uncommon for a child to initially deny conduct such as this. I mean, do you dispute that? I don't dispute that, but I would go a step further and say if children commonly deny allegations of child abuse, I believe that it would be a better tact to wait a couple of days, bring the child back and conduct a re-interview. Those officers are walking a tightrope in this situation because you don't want to further damage a child by harping on what happened. I mean, I'm just thinking out loud. Well, there's certainly, Your Honor, the, the methods used by trained social workers could, could acknowledge that point and work around it. What about the Dr. LaMonaco report? Do you say it's inconclusive basically, just like an inconclusive on a lie detector that didn't help or hurt? Dr. LaMonaco's report was a thorough investigation. He made several findings. He did a thorough examination and made several findings that are set forth in the sealed documents. And the government, the prosecution asked for it. And the government asked for it. They thought the three week delay was not that significant apparently. Well, Your Honor, if, if, if you apply the, if you apply the test that was set forth in Miller, where you excise the offending information and insert the omitted information, then what we would have here is that the child denied the allegations of allegations six times and that there was no physical evidence to corroborate the account that she gave. And the account that she gave was so ridiculously absurd that any reasonable police officer would know, would know that there was a problem. How would you characterize the prosecutor's decision looking at the evidence being actually able to see what happened, making the decision to seek an indictment and the grand jury indicting? Well, I don't, I don't have the mind of the prosecutor. I don't know what's in the mind of the prosecutor. However, I do know that the warrant was issued by a judicial officer first and the indictment followed. Now the indictment followed and when, when the, when the warrant issued and Mr. Osborne was arrested on the warrant, then he was entitled to a preliminary hearing. However, commonly in Maryland what happens is once they indict, it takes the preliminary hearing off the table. And so the end result of it is Mr. Osborne never really had a real opportunity to question the evidence before an actual judge. And so, and that's what the indictment did for the government. You've said that no reasonable officer could have seen what happened and believed there was enough evidence to think this person committed a crime. But the prosecutor looked at the same evidence, submitted it to the grand jury, the grand jury indicted. Now how do you characterize that? Are they also unreasonable? Is the prosecutor also unreasonable? I would say, I would say under these circumstances, yes, your honor, the prosecutor should have said, I don't think we, they are held to a higher standard. The prosecutor should have said, I don't think we have enough here. Let's go back and see what else you can find. And the prosecutor then should have guided the police officer in his investigation. I don't believe that that happened in this case. Yeah. From this record, we don't know if the grand jury heard that, that there was six denials. Do it. I know. I don't, I don't know that we know that we don't know that it was a question was asked to you. A grand jury did it, but we don't know what the grand jury heard. But the point that a prosecutor also did it, well, maybe there should be two defendants here. I mean, that might be the answer to that, but that wouldn't shield because another prosecutor, because the prosecutor did it. I mean, would it, but because we don't, we just don't know. But the district court hearing this and looking at the evidence that there were factual questions because in the fourth circuit, we take you into these qualified immunity matters where if there's factual questions and we, we say we don't have jurisdiction to do that. And you're not, and you're honest. I would, I would point out that it's important to note that the, that the, the arrest warrant preceded the grand jury indictment in the harming case that the government refers to the criminal indictment preceded the grand jury, the arrest warrant. It was a, it was a situation where a drug buy and the, the government took the case to the grand jury and the grand jury indicted and an arrest warrant then issued. And the gentleman was then I think he eventually turned himself in. Um, but, and I don't, I don't believe that if a, um, if it had been the other way around, the court may have found differently in the Harmon case. Uh, and your honor, uh, I was able, I was not able to find a case in the fourth circuit, but a sister circuit, uh, the 11th circuit in the case of Garmin V Lumpkin, which is eight 78 F set F second 14 Oh six in a similar situation. Uh, that court held that, um, that rejected the, uh, the argument that the grand jury indictment established probable cause and specifically stated that a subsequent indictment, uh, to an arrest warrant does not retroactively provide probable cause for an arrest that has already taken place. And so corporal G. Adati's actions and omissions and fabricated evidence provided the probable cause for his arrest. And he was subsequently in and Mr. Osborne was subsequently indicted for reasons that we don't have information about. But the clearly, uh, a reasonable inference can be drawn that the same testimony is what caused the indictment or the same, the same information, and the same tainted information that was included in the arrest warrant is the same information that was presented before the grand jury. And under those circumstances, the grand jury does not break the causal chain. Uh, why doesn't it, would you say that again? Why does not, why does the indictment from the grand jury not break the causal chain? Because, because of the previous arrest and the information presented in the arrest warrant was so tainted and a reasonable inference can be, and I'm sorry, your honor, but I can't finish your statement please. And a reasonable inference can be drawn that the same information, the same tainted information that was included in the, uh, affidavit for probable cause was also presented before the grand jury because the charges are strikingly similar. Okay. Thank you. Thank you. All right. Ms. Duvall, you have some time remaining. Let me ask you, if the, if the two things omitted from the application for the arrest warrant, the two primary things were the child's initial denials of the conduct and then the later examination by Dr. Lamonaco, I understand your argument that the law enforcement does not have an obligation to throw everything at the issuing judicial officer. Not, doesn't have to try the whole case in other words, give them all the inferences both ways and everything. But it seems to me you could set aside the child's early denial, but the later forensics that the government requested, uh, even though it was inconclusive, it seems like, uh, in other words, what if it was, what if it was fingerprints that didn't match or DNA that didn't match? Don't, doesn't law enforcement have an obligation to put that before the judicial officer? Even if you put aside the conflicting testimony, because there are a lot of different conflicting stories in most cases, but the forensics is what bothers me. Certainly. And even if you put that back into the affidavit for the warrant, the, the district court below submitted that that did not negate probable cause. So that would be the test that you would add Dr. Lamonaco. Let me get back to what he said. He said it was. Dr. Lamonaco or the judge. No, Dr. Lamonaco. Dr. Lamonaco said that he found no physical evidence of abuse, but could not rule out abuse. So if corporal Giordani's put in the affidavit that Dr. Lamonaco did a physical examination and remember your honor, it was three weeks after the alleged abuse occurred. So that wouldn't be uncommon to have any evidence washed away. Or if there was any trauma that would be healed, it's three, three weeks. So October 16th and November 3rd. So what he said was that he could not rule out abuse, but he could find a physical evidence of abuse. But even if you insert that into the affidavit, which presumably judge Bennett did because he followed the Franks v. Delaware test, He did not conclude that that probable cause was negated, which is what is required of that particular prong. So. I believe that qualified immunity would still be available to corporal Giordani's because the Franks v. Delaware test, even if we assume that there was the intent to mislead, which I contend there was, there's no proof of that or the reckless disregard of whether it would mislead. The second prong fails because judge Bennett did not rule that he said it. I believe he said it has the potential to impact probable cause or could impact probable cause, but he didn't conclude that it negates probable cause, which is what is required relevant, but not dispositive is not enough in that case. But to address, if I may just for a moment, what Mr. Smith raised, he indicated that no reasonable well-trained officer would conclude that this was viable evidence. And I disagree. You have the licensed clinical social worker who clearly is the expert in asking questions of children and ferreting out whether abuse occurred or not. She concluded that abuse had transpired after the, after the interview. You also have, as, as your honor pointed out, just tracks or pointed out that the assistant state's attorney heard all of the evidence. And she took that for prosecution. And again, I would point out that how does she conclude that she, she told corporal to accept the case that she was accepting the case for prosecution and that to file his arrest warrant. And I would talk with the experts. How does she conclude it? She conducted the interview and then she talked to somebody. I would, how does she make that conclusion? They do a, a report that says whether they believe abuse had been indicated. It's really just subjective. It's subjective. It has to be subjective to some extent, your honor, because, but you have an eyewitness account, the victim who had, who had denied it several times because, but then you can't win because they're supposed to deny it, right? It's almost like that. Well, they didn't deny. It's almost like they didn't deny it. Then it would be, maybe it's not true because they did not. And it's true. It's very commonplace. And I think what they, what they do, it's very commonplace because people just allow what they call science to be admitted. But it's really nothing more than their opinion really. Is it? In this case, we would have eyewitness testimony. I know it, but the eyewitness testimony is not, but then the experts said denial is, is indicative of truth. I don't think they say it's indicative of truth, but it doesn't necessarily negate it. And so I don't think you can say she denied it there and then came forward and said it was true. And therefore it's true because of the denial. Why it's important to have the physical evidence here, because that's all it becomes in the case like this, uh, uh, uh, uh. Um, if they equalized it, and it seemed like any officer would have reasonable officer would have known that that's what the district court found in that sense. Why it goes forward. But at this point we don't have a trial yet. We don't know what may happen at trial. We had a, we had a criminal trial or, or that was proceeded, but your honor. And I disagree that, uh, without physical proof, you can't go forward. No, no, I didn't say that. You couldn't go forward and so it would be important in this case to know what the physical evidence finding was. To the, I'm out of time. May I finish? Yeah. You, you mean to be important in terms of the, the, the, the independent magistrate, the person issuing the arrest warrant, the grand jury, those people. Well, we don't know what the grand jury heard your honor. But, and, but if you look at, take advantage of that, can you kind of take advantage of it? We don't know. There's nothing new to your benefit. Even if you completely disregard the findings of the grand jury and, and say that that's not conclusive proof of probable cause, you have all the other evidence, which would include the, um, the statement from the little girl that is compelling. I don't think it's an outlandish statement that she gave. There's one particular instance where she references a foot. I can't get it. And that's when they cut it off. I agree. You're on cutting it off. It's very important in this case. It wasn't just your typical cutting off. But I think your honor that police officers, like all professionals have an obligation to assess evidence. And I believe the court in Taylor v. Farmer put it very eloquently that the, that the investigatory pieces of a puzzle don't necessarily fit cleanly. And so, um, police officers are often faced with having to look at conflicting evidence and make a determination. And we haven't, he took it to his assistant state's attorney who accepted it for prosecution. And in the Watkins case, even if Watkins versus Atkins, I believe that if a police officer takes it to the attorney and it proceeds, that that can be a factor, even if there is a violation of a constitutional right, because of a reasonable reliance on that attorney. And she did accept it for prosecution. And it went to very close to trial when she offered the stat. And I believe that it was done because of the little girl being afraid to testify. And I believe it's in the record, um, before judge Bennett. But I do think he acted reasonably. This is, it was a serious allegation, but there's a very serious argument that's without, there's no question about it. It's a serious allegation, but also it requires serious police conduct and everybody in terms of conduct. And you talked about letting everything go forward. Police officers have to make decisions. I'm not sure about it. That's what courts are for. Police officers are to give gather evidence and rightfully put it for, but yeah, this is of course, this is for later to be determined, but whatever determined, but when you cut it off, you can't regain that, right? The flow of the evidence, the interview, the interview, you can't cut when you cut away with us enough to cut it off right there that that can never be presented. Can it? No, that would not be able to say that's it. That's within the race. Just die of the evidence itself. But the, I would point out that certainly she had given her account only 10 minutes into, there was a 38 minute interview. She gave her full account at 10 minutes. And was, like I said, very graphic about what had transpired to her. I can't answer why it was cut off. It's a telephone conversation, which lasted a few seconds. Juror concluded that was indicative of, of, of something. It was the, the, the charge, the civil action, right? Well, again, then intent, wouldn't it be a conclusion with regard to the reckless disregard, cutting it off potentially, but then you still have to, the second prong of, of Franks v. Delaware, which has not been met, which is inserting it and negating probable cause. So even if you assume that the first prong has been met and reckless disregard, because he cut off the interview and, and we're presuming he's the one that cut off the interview. We don't have that in evidence either way, but even if you presume that he's the one that cut off the interview, Correct. That you assume that you did, you still have the second prong of the Franks v. Delaware test that, that didn't negate probable cause. Thank you. Thank you very much.
judges: William B. Traxler Jr., Roger L. Gregory, Joseph F. Anderson Jr.